## Com. ex rel. Lesher, District Attorney, et al. v. Dock et al.

*Corporations—Meetings—Voting—Proxy—Stockholders' lists — Registration—Act of March 5, 1903.*

1. The right of voting at an election of a corporation by proxy is not a general right. A party who claims it must show a special authority for that purpose.

2. Under the Act of March 5, 1903, P. L. 14, the right to vote by proxy is expressly conferred upon stockholders of all corporations of Pennsylvania.

3. A corporation chartered in 1857, although it has not accepted the Constitution of 1874, and although an amendment of its charter, adopted in 1913, provides that "all votes cast must be done by the actual owner of the stock," nevertheless, is subject to the Act of March 5, 1903, P. L. 14, giving to the stockholders of all corporations the right to vote by proxy.

4. Where the constitution and by-laws of a corporation provide that the record of the stock shall be kept in a stock-book for that purpose, and that no member shall vote unless his stock has been recorded on the books of the company at least one full week prior to the election, and it appears that no stock-book was kept, a member whose stock was not recorded cannot vote either personally or by proxy.

5. In such case, if the member does not see to it that his stock is properly recorded in a book kept for that purpose, and he is prevented from voting because of this dereliction, he has only himself to blame.

*Quo warranto.* C. P. Union Co., March T., 1924, No. 4.

*E. M. Beale* and *C. M. Clement*, for relators.

*Cloyd Steininger* and *Clair Groover*, for respondents.

POTTER, P. J., Sept. 15, 1924.—This is a suggestion and petition for a writ of *quo warranto*, directed to the respondents to show by what warrant they claim to have, use and enjoy the offices of president, secretary and directors of the Union County Agricultural Society. The suggestion for the writ alleges that on Jan. 5, 1924, an election was held for the election of a president, a secretary, a treasurer and for twenty-five directors of the said society, which is a corporation, and that certain persons presented proxies and ballots for certain absent persons, claiming the right to vote them, which were rejected and not counted by the persons conducting the said election, by virtue of which the respondents were wrongfully declared to be elected to fill the offices then balloted for.

An answer was filed and an issue was raised, which can be briefly stated to be, whether or not, under the law and the rules and regulations governing the said society, proxy votes can be legally voted and counted. If they can, then the present incumbents are wrongfully in office; if they cannot, then they are the legally elected officers of the said society.

The Union County Agricultural Society was duly organized and chartered on Sept. 28, 1857, for the object of the improvement and advancement of agriculture and horticulture and the domestic and mechanic arts, its charter having been granted and its constitution and by-laws approved on that date by the Court of Common Pleas of Union County, and it has continued to do business under the same charter down to the present time without any amend-

ment or addition. In this charter, or in the constitution approved at the time of its creation, we find no word regarding voting by proxy, and no by-law has to this date been adopted permitting it. In the absence of any express authority in the charter, and without any by-law authorizing it, can a stockholder vote by proxy? Is it a power necessarily incident to the corporate rights of a stockholder?

A corporation is a mere creature of the law. It cannot exercise any power or authority other than those expressly given by its charter, or those necessarily incident to the power and authority thus granted, and, therefore, in the estimation of law, part of the same: Wolf *v.* Goddard, 9 Watts, 544; Diligent Fire Co. *v.* Com., 75 Pa. 291.

The right of voting at an election of an incorporated company by proxy is not a general right. The party who claims it must show a special authority for that purpose: Craig *v.* First Presbyterian Church, 88 Pa. 42; Wilson *v.* American Academy of Music, 2 Pa. C. C. Reps. 280. The power might be delegated in some cases by by-laws of a corporation, where express authority was given to make such by-laws, regulating the manner of voting: Com. *v.* Bringhurst, 103 Pa. 134.

In the case of People *v.* Twaddell, 18 Hun (N. Y.), 427, it was held a stockholder cannot so vote unless expressly authorized by the charter or by-laws. In Taylor *v.* Griswold, 14 N. J. Law, 222, it was held that a right of voting by proxy is not essential to the attainment and design of a charter, and even a general clause therein authorizing the company to make by-laws for its government was insufficient of itself to give that right. In State *v.* Tudor, 5 Day (Conn.), 329, there was no clause in the charter authorizing the stockholders to vote by proxy, yet the company made a by-law authorizing them so to vote, and it was sustained.

The selection of officers to manage the affairs of this corporation requires the exercise of judgment and discretion. They must be elected by ballot. The fact that it is a business corporation increases the obligation that all the members assemble together, unless otherwise provided, for the exercise of a right to participate in the election of their officers.

In the case of Brown *v.* Com., 3 Grant, 209, Chief Justice Lewis says: "But it seems reasonable to hold that in a case where the shareholders are embarked in a common enterprise, and where the vote of each affects the interest of the others in the management of the concern, the election of directors shall take place under circumstances favorable to a consultation with each other, so that they might have the benefit of each other's views and information relative to their common interest, and this can only be done by requiring the stockholders to be present when voting. . . . The charter declares that 'each person being present at the election' shall be entitled to vote, and there is no provision in favor of voting by proxy."

So that unless so provided by its by-laws, charter or constitution, in the absence of legislative enactment, no proxy vote could be voted at a corporate election in the case at bar, there being no reference made to it in any of these instruments.

But it is claimed the Act of March 5, 1903, P. L. 14, provides for voting by proxy. This act is as follows: "That stockholders of *all* corporations of this Commonwealth, wherever residing, who shall be entitled to vote at any corporate meeting or election thereof, shall have and be possessed of the right and power to vote thereat *by proxy* duly executed by the stockholder, either with or without notarial or other acknowledgment, but properly attested by the signature of a witness, and that one person may be constituted and act

Com. ex rel. Lesher, District Attorney, et al. *v.* Dock et al.

as proxy for any number of stockholders: Provided, however, that proxies dated more than two months prior to such meeting or election shall not confer the right to vote thereat."

Then we also have the Act of May 7, 1889, P. L. 102, as amended by the Act of May 26, 1893, P. L. 141, which provides as follows: "That the certificate of stock and transfer books, or either, of *any* corporation of this Commonwealth shall be *prima facie* evidence of the right of the person named therein to vote thereon as the owner, either personally or by *due proxy*."

The right to vote by proxy is expressly conferred upon stockholders of *all* corporations of the Commonwealth by the Act of March 5, 1903, P. L. 14: Com. *v.* Roydhouse, 233 Pa. 234.

In the amended constitution of the Union County Agricultural Society, approved March 10, 1913, by the Court of Common Pleas of Union County, article 5, section 2, we find the following: "All votes cast must be done by the actual owner of the stock."

It is very plain to be seen that in the face of the two acts of assembly and the decision of our Supreme Court, just above cited, a stockholder of any corporation in the State of Pennsylvania can vote his stock by proxy, if he has complied with the requirements of the constitution and by-laws not in contravention of the laws of this State.

And this brings us to consider a more serious aspect of this case. In article 5, section 1, of the constitution of this corporation we have the following: "All members entitled to vote at the annual election must be of record on the books of the secretary at least one full week prior to the election." Article 5, section 4, of the by-laws is as follows: "He (the secretary) shall make a record of all stock issues as well as transfers of the same, in a stock-book for that purpose."

Of course, if the secretary does not perform his duties in regard to keeping a stock-book, it might seem a hardship if the stockholder was prevented from voting because of his fault in not keeping a stock-book and in not keeping a record of the names of the stockholders, the numbers of the stock certificates, the number of shares and the date acquired, but even then the stockholder has his remedy, and he should see to it that his stock is properly registered. If he does not, and he is prevented from voting because of this dereliction, the fault is his own and he should not complain.

We clearly see in this case that there must be a stock-book. There appears to be none. Several loose sheets of paper were produced, and by these it was attempted to show some of the names of some of the stockholders. In the case of F. E. Brown, who was a candidate for the office of president of this society, his stock was not registered in any stock-book, and he could not even produce any certificate of stock. What have we to show that he is even a member of this society? Nothing. He claims to have been a member for many years and to have been president for some years, but there is absolutely nothing before the court to show that he is a member. From a legal viewpoint, he is not. He may be able to produce a certificate of stock, but should he do so, it is not registered. He had some twenty proxies made out to him to be voted by him for himself for president and for other officers. If he could not establish his legal membership in this society, he could not vote his own vote, nor the proxies given to him, and much less could he be an officer of the society. The same line of reasoning applies to his vote as well as to the proxies given him in the election of secretary, treasurer and directors. He, as well as many others of those who claim to be stockholders, have not complied with the requirements of the constitution and by-laws, and we think the

election board were right in rejecting the proxies tendered by him, and we further think they would have been within their province had they rejected his vote as well as, perhaps, many more that were not on the records one week before the election.

When the testimony was taken in this case, we thought the officers of this society had a very loose manner of doing business, and we still think so. In view of the disposition we are making of this case, we would suggest that all the certificates of stock be registered in the stock-book showing the name of the stockholder, the number of the certificate, the number of shares, the date acquired, whether by first purchase or by transfer and from whom transferred, and hereafter when any share of stock is sold or transferred, the name of the new owner, with the date of transfer, should clearly appear.

So far as we are able to understand, the proposed election, permitting the votes of proxies to be counted, as hereinbefore mentioned, would not and could not have been legal; wherefore, we must hold the election, as it now stands, to have been legal, and, accordingly, we find the officers elected at the election of Jan. 5, 1924, legally and properly elected for the term of one year from that date. And we would suggest that the records of this society be prepared in proper and legal form, to the end that the next election may be legal and not open to contention.

The practice controlling *quo warranto* proceedings is not embraced under our Practice Act of 1915. That act relates to trespass and *assumpsit*, while the *quo warranto* practice is separate and distinct as is the procedure on *habeas corpus*, replevin, account-render and the like.

It is contended by the respondents that, inasmuch as this society was chartered in 1857, it does not come under the Constitution of 1874, that it has not embraced the provisions of the new Constitution. That may be true, as is indicated in the case of Williamsport Passenger Ry. Co.'s Appeal, 120 Pa. 1, and in the case of Gloninger *v.* Pittsburgh & C. R. R. Co., 139 Pa. 13. But because this society has taken no steps to place themselves under the provisions of the new Constitution of 1874 in no wise indicates that they are not included within the provisions of the Act of 1903, hereinbefore cited, which provides that *all corporations* of this Commonwealth shall have the right to vote by *proxy.* The provision in the constitution of this society forbidding proxy voting is in direct oppositon to this statute, and must, therefore, be regarded as void. The act was passed in 1903. The new constitution of this society was adopted and approved in 1913, ten years after this act became a law in this State. Then, again, the last two cases cited were decided before the Act of 1903 was passed, and are not applicable in view of it.

We cannot legislate out of existence this Act of 1903. It is here, a statute on the books, and as long as it remains such, we must abide by its provisions, whether they suit us or not.

And now, to wit, Sept. 15, 1924, for the reasons as in this opinion expressed, the *quo warranto* proceedings are dismissed, at the costs of the relators.

This case having been submitted to the court for disposition, and a trial by jury dispensed with, the prothonotary is directed to give immediate notice, in writing, to counsel for the relators and to counsel for the respondents of the filing of this opinion, and if no exceptions are filed thereto within thirty days after the said notices are served as above directed, judgment to be entered in favor of the respondents. If exceptions are filed within the said period of thirty days, they are to be placed on the argument list to be heard at next argument court.

From Charles P. Ulrich, Selinsgrove, Pa.